UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MALIBU MEDIA, LLC, <br> *Plaintiff*, <br><br> v. <br><br> GIAN MANTILLA, <br> *Defendant*. | No. 3:18-cv-01369 (JAM) |

**ORDER GRANTING RENEWED MOTION FOR DEFAULT JUDGMENT**

Plaintiff Malibu Media, LLC has filed this copyright infringement action against defendant Gian Mantilla. Malibu Media alleges that Mantilla is the named subscriber to a Cox Communications internet service account that is associated with an IP address used to unlawfully download its films. In two prior motions for default judgment, Malibu Media did not allege sufficient additional facts linking Mantilla to the infringement, and I denied its motions without prejudice because I concluded that Malibu Media had not stated plausible grounds for relief. *See Malibu Media, LLC v. Doe*, 2020 WL 4719219 (D. Conn. 2020); Doc. #36.

Now Malibu Media has filed a second renewed motion for default judgment with a supporting affidavit that alleges facts to plausibly suggest that Mantilla infringed Malibu Media's copyrights, including that he is the sole occupant of the residence linked to the IP address and that other downloads using this IP address match his occupation and interests. Accordingly, I will grant Malibu Media's motion for default judgment.

**BACKGROUND**

Malibu Media filed this action against Mantilla, the then-unknown subscriber of the account assigned to IP address 72.192.32.104, alleging violations of the Copyright Act. Doc. #1. Malibu Media alleges that the IP address in question was used to illegally distribute five of its

copyrighted movies, after its investigator established a direct TCP/IP connection with the IP address and determined that the "BitTorrent file distribution network," a peer-to-peer file sharing system, was used to copy Malibu Media's films without authorization. Doc. #17 at 2-4 (¶¶ 10-23) (amended complaint). Malibu Media's investigator proceeded to use "proven IP address geolocation technology," which it claims has "consistently worked in similar cases," to trace the IP address to a physical address located within the District of Connecticut. *Id*. at 1-2 (¶ 5).

I granted Malibu Media's motion for leave to serve a third-party subpoena on Cox Communications to obtain the name of the owner of the internet subscriber account that was assigned to the IP address at the relevant time. Docs. #8, #10. Pursuant to that subpoena, Malibu Media determined that Mantilla is the owner of the internet subscriber account.

Malibu Media then filed an amended complaint naming Mantilla defendant, alleging that he "downloaded, copied, and distributed a copy of Plaintiff's movies without authorization" and that he "is a habitual and persistent BitTorrent user and copyright infringer." Doc. #17 at 4 (¶¶ 23, 25). As its single cause of action, Malibu Media asserts direct infringement of copyright under 17 U.S.C. § 106 *et seq*. *Id*. at 5-6 (¶¶ 28-33).

Mantilla was personally served with a summons and amended complaint at an address in Wethersfield, Connecticut. Doc. #23. He did not answer or otherwise appear in the action. In May 2019, I granted a motion for default entry against Mantilla with leave granted to Malibu Media to file a motion for default judgment. Docs. #25, #26.

In June 2019, Malibu Media moved for default judgment against Mantilla. Doc. #29. Although Mantilla did not oppose the default judgment motion, I nonetheless denied it without prejudice on the ground that the bare allegation that Mantilla was the subscriber for the IP address in question did not plausibly establish that it was Mantilla who used the address to

engage in unlawful downloading of Malibu Media's films. Doc. #33; *Malibu Media, LLC v. Doe*, 2020 WL 4719219 (D. Conn. 2020). Notwithstanding Malibu Media's well-pleaded allegations that *someone* infringed its copyright, it did "not allege any additional facts to make it plausible to conclude that it was [Mantilla]—rather than other persons—who was responsible for the infringing activity" beyond his subscription to the infringing IP address. *Id*. at *4. Malibu Media did not allege any facts that anyone ever spoke with or contacted Mantilla personally, nor that Mantilla had exclusive access to the internet account assigned to the specified IP address. *Id*. at *2. Nor did it allege facts about the type of physical address the IP address was linked to, how many people reside there, or the network configuration at that address. *Id*. at *4. Accordingly, I denied Malibu Media's motion without prejudice to filing a renewed motion for default judgment that cured the deficiencies identified in my order. *Ibid*.

In September 2020, Malibu Media filed a renewed motion for default judgment. Doc. #34. Through an affidavit from its counsel that was attached to the renewed motion, Malibu Media alleged additional facts that "tend to show only that Mantilla has used the IP address but [did] not shed light on whether anyone else uses the IP address." Doc. # 36 at 3. Although I noted Malibu Media's memorandum of law alleged "additional facts that would satisfy the plausibility standard," those facts were asserted without citation and without support in the sworn supporting affidavit. *Id*. at 4. Accordingly, I did not credit the unsupported factual allegations and again denied Malibu Media's motion for default judgment without prejudice to filing a properly supported renewed motion. *Ibid*.

Malibu Media has now filed a second renewed motion for default judgment seeking statutory damages in the amount of $7,500, a permanent injunction, and an award of costs of $480. Docs. #38, #38-3 at 17. Malibu Media's renewed motion is once again unopposed, but this

time it includes additional supported factual allegations suggesting that Mantilla is indeed the only person with access to the specified IP address. In a sworn affidavit from its counsel that is attached to the renewed motion, Malibu Media alleges the following facts specific to Mantilla revealed by its investigation: that "Defendant is a single male who has lived at his primary residence during the dates of infringement"; that "Defendant owns his residence, alone, and does not have other individuals living with him in this residence"; that "Defendant has an occupation and is interested in photography and videography"; that "Defendant's IP address was used to download a number of photography and videography software and resource materials"; and that "Defendant's IP Address was also used to download The Walking Dead tv aftershow, The Talking Dead[,]" which "comports to Plaintiff's investigation into Defendant's social media profiles, which reveals that Defendant has an interest in The Walking Dead television show." Doc. #38-5 at 1-2 (¶¶ 7-11). Based on this evidence revealed in its investigation, Malibu Media argues Mantilla "is the most likely person to have used BitTorrent in the house from where the infringement emanated." Doc. #38-3 at 9.

## DISCUSSION

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotations and citations omitted). Federal Rule of Civil Procedure 55 "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *Id.* at 128; Fed. R. Civ. P. 55(a)-(b). Once the clerk enters a default pursuant to Rule 55(a), "the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers &*

*Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

Although it is true that "a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint," it is also true that "a district court need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop*, 654 F.3d at 137. That is to say, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Import & Export Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (default judgment wrongly entered on breach of contract claim against party who was not a party to the contract and in the absence of further factual allegations to show that the non-party was subject to veil-piercing liability for breach of contract).

A court should not grant a motion for default judgment simply because a plaintiff alleges in a conclusory fashion that a defendant has violated the law. Instead, the factual allegations in support of default judgment must establish plausible grounds for relief. Thus, a court must evaluate whether the factual allegations set forth as a basis for the default judgment motion would survive a challenge by way of a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014); *Atl. Recording Corp. v. Brennan*, 534 F. Supp. 2d 278, 283 (D. Conn. 2008). As the Supreme Court has noted, the plausibility standard that governs the adequacy of the factual allegations of a complaint "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As I noted in my order denying Malibu Media's first motion for default judgment, its copyright infringement allegations are well-pleaded. *See Malibu Media*, 2020 WL 4719219, at *3 (D. Conn. 2020). To establish infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v. CBS Broadcasting Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (citing *Feist Publications, Inc. v. Rural Telphone Service Co.*, 499 U.S. 340, 361 (1991)).

Malibu Media has plausibly established that it is the owner of the five copyrights at issue. *See* Doc. #17 at 1, 5 (¶¶ 3, 29). For the second element, Malibu Media plausibly alleges that it has an actionable claim for direct copyright infringement against Mantilla due to the "unauthorized use of the 'BitTorrent' protocol to illegally download, reproduce, distribute, perform, and display" the works in question. Doc. #38-3 at 4. Malibu Media's amended complaint alleges that its investigator established a direct connection with Mantilla's IP address, downloaded from Mantilla one or more pieces of each of the five digital media files it identifies, and that each digital media file hash correlates to a copyrighted film it owns. Doc. #17 at 3-4 (¶¶ 17-21).

Malibu Media contends that by using BitTorrent, Mantilla copied and distributed the constituent elements of each of the copyrighted works without its authorization, permission, or consent. *Id*. at 4-5 (¶¶ 23, 31). Using file-sharing software and protocols, such as BitTorrent, to download copyrighted works and reproduce, distribute, display, or perform them without permission of the copyright holder constitutes copyright infringement. *See, e.g., John Wiley & Son, Inc. v. Williams*, 2012 WL 5438917, at *3 (S.D.N.Y. 2012) (finding that the nature of BitTorrent peer-to-peer file sharing leads to further distribution of copyrighted works). Further, in failing to plead or otherwise defend against Malibu Media's action, Mantilla has admitted to

these allegations. Accordingly, Malibu Media has plausibly alleged a claim of copyright infringement for the five works at issue.

And, unlike Malibu Media's prior motions for default judgment, its second renewed motion contains properly supported and plausible allegations that it was Mantilla, not any other user of the specified IP address, who infringed on its copyright. In particular, Malibu Media has now substantiated with an affidavit its allegation that Mantilla "owns his residence, alone, and does not have other individuals living with him in this residence." Doc. #38-5 at 2 (¶ 8); *see also* Doc. #38-3 at 1-2. Malibu Media has also alleged facts in the affidavit that Mantilla's occupation and interests strongly correspond to network activity over the IP address at issue. Doc. #38-5 at 2 (¶¶ 9-11).

In light of these facts alleged in the affidavit, I conclude that Malibu Media has now plausibly alleged that Mantilla infringed on its copyright. *See Malibu Media, LLC v. Doe*, 2019 WL 8301066, at *2 (N.D. Ill. 2019) (denying motion to dismiss by defendant subscriber of ISP account because "Malibu Media's [new] allegations about Doe's background in computer science and presence as the lone adult male in the residence during the period of infringement further make it plausible that Doe, and not another individual, was the infringer.")

### *Damages*

Malibu Media seeks statutory damages under 17 U.S.C. § 504, which states that "the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Malibu Media also contends that the nature of Mantilla's infringement and BitTorrent software, and his default, means his infringement was "willful," which allows the Court to

increase statutory damages up to $150,000 per infringement under 17 U.S.C. § 504(c)(2). Doc. #38-3 at 5-6, 10.

It is well-established that district courts "enjoy wide discretion in setting statutory damages" within the minimum and maximum amounts prescribed by the Copyright Act. *Castillo v. G&M Realty L.P.*, 950 F.3d 155, 171 (2d Cir. 2020) (citation omitted). The Second Circuit has found six factors are relevant to determining statutory damages: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Id.* at 171-172 (citation omitted).

Many of these factors are difficult to ascertain in this case given the limited record before me. Malibu Media asks for two times the minimum statutory damages for each of the five copyrighted works at issue, or $7,500 total, arguing that Mantilla's infringement was "willful," and that "[t]his amount is reasonable when considering that Plaintiff's actual damages far exceed this sum" in that Mantilla "aided each of the other participants in the BitTorrent swarm of infringers," resulting in "lost sales of its content to those thousands of infringers" that "far exceed $7,500." Doc. #38-3 at 12. But Malibu Media offers no particularized evidence to substantiate these claimed actual damages or Mantilla's state of mind in infringing. Malibu Media has not offered any evidence of the direct cost to its business from Mantilla's infringement, nor evidence that Mantilla profited from the infringement or received savings. *See Malibu Media, LLC v. Baker*, 2020 WL 3978302, at *6 (awarding the minimum statutory damages in suit with similar allegations and noting Malibu Media "proffered no admissible evidence concerning the expenses saved or profits earned by defendant, the revenues lost by

plaintiff, or the value of plaintiff's copyrights"), *report and recommendation adopted*, 2020 WL 3972736 (S.D.N.Y. 2020).

Moreover, as to whether Malibu Media has actually sustained substantial damages, it appears from the sheer number of lawsuits filed by Malibu Media in this Court and across the nation that there is good reason to doubt the extent to which Malibu Media's business model is premised on sales of copyrighted material as distinct from litigation income. *See, e.g., Malibu Media LLC v. Duncan*, 2020 WL 567105, at *3 (S.D. Tex. 2020). All in all, my consideration of the factors leads me to conclude that it is appropriate to award the minimum statutory damages—$750 per copyrighted work, for a total judgment of $3,750.

### *Permanent injunction*

Malibu Media also seeks a permanent injunction against Mantilla "and all other persons who are in active concert or participation with [him] from continuing to infringe [Malibu Media's] copyrighted works," as well as ordering Mantilla to permanently delete the infringing copies of their films and "digital media files relating to [Malibu Media's] works" from his computers. Doc. #38-3 at 13, 17. Under 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Additionally, "[a]s part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights." 17 U.S.C. § 503(b).

But the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006).

Therefore, for a permanent injunction to be warranted, the plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*. at 391. Courts generally grant permanent injunctions "where liability has been established and there is a threat of continuing infringement." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 637 (S.D.N.Y. 2018) (internal quotation omitted).

    I agree with Malibu Media's contention that each of these factors have been met as it pertains to the five infringing copies of Malibu Media's works in Mantilla's control. Malibu Media has established irreparable harm because "irreparable harm is presumed where a party has established a *prima facie* case of copyright infringement," and "by using BitTorrent, Defendant was able to distribute copies of the copyright works to other peers continuously, thus facilitating future infringement." *Malibu Media v. Baker*, 2020 WL 3978302, at *7 (citations omitted). Mantilla's "ability to continue his infringement absent an injunction shows that monetary damages are insufficient to provide Plaintiff with relief." *Malibu Media v. Doe*, 2020 WL 2736723, at *4, *report and recommendation adopted*, 2020 WL 2734900 (E.D.N.Y. 2020). The "balance of hardships favors Malibu Media, as it is axiomatic that an infringer cannot complain about the loss of ability to offer its infringing product." *Ibid*. (internal quotation omitted). And the public interest would not be disserved by a permanent injunction against Mantilla, because "the public has a compelling interest in protecting copyright owners' marketable rights to their work so as to encourage the production of creative work." *Ibid*. (internal quotation omitted). Accordingly, as many other courts have done in similar default judgment orders, I will issue a

permanent injunction against Mantilla from further infringement of Malibu Media's five copyrighted works, and ordering Mantilla to delete the infringing works and related digital media files from his devices. *See, e.g., ibid.*; *Malibu Media v. Baker*, 2020 WL 3978302, at *7.

However, to the extent Malibu Media requests I enjoin "all other persons who are in active concert or participation" with Mantilla and order Mantilla to destroy its "works" beyond the infringing copies and related files, I will decline to do so. I will not enter judgment against unknown parties not named defendants in this lawsuit or address ambiguous "works" for which infringement has not been established. *See Malibu Media v. Baker*, 2020 WL 3978302, at *8 (denying Malibu Media's request for "a broader injunction or destruction order" extending to films or "all of its 'Works'" for which infringement was not established).

*Costs of suit*

Finally, Malibu Media seeks $480 in costs pursuant to 17 U.S.C. § 505, which provides "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof."[1] Doc. #38-3 at 17. Courts "routinely award costs to the prevailing party in copyright cases." *Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 304 (D. Conn. 2012) (internal citation omitted). Malibu Media's requested costs represent the statutory filing fee ($400) and the process server fee ($80), but it has not provided any documentation in support of those fees beyond the statement in its attorney's affidavit. Doc. #38-5 at 2 (¶ 13). Malibu Media's filing fee of $400 is substantiated on the docket and is recoverable. Doc. #1. But under this Court's rules, "[a]ll claims for service fees by private process servers shall be supported by documentation submitted with the bill of costs." D. Conn. L. Civ. R. 54(c)(1).

---

[1] The costs of suit may include "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. But Malibu Media does not specifically request attorney's fees in its motion for default judgment, nor does it provide any estimate of attorney's fees incurred or documentation in support of any such fees so that I could evaluate their reasonableness. Accordingly, I will not consider an award of attorney's fees for this action.

Because Malibu Media has not provided the necessary documentation for the cost of serving process, I will not award it the $80 in costs it requests for that expense. *See Malibu Media, LLC v. Doe*, 2020 WL 2736723, at *5 (awarding costs for filing fee but denying costs for process serving fee that was requested without supporting documentation). Accordingly, I conclude $400 in costs is reasonable and appropriate under 17 U.S.C. § 505.

## CONCLUSION

For the reasons set forth above, the motion for default judgment (Doc. #38) is GRANTED. The Clerk of Court shall enter final judgment in plaintiff Malibu Media's favor on its copyright infringement claim. The Court awards Malibu Media statutory damages of $3,750 against defendant Mantilla under 17 U.S.C. § 504(c), and $400 in costs for the suit pursuant to 17 U.S.C. § 505. Mantilla is enjoined from further infringement of Malibu Media's five copyrights at issue in this lawsuit, and is ordered to destroy any copies or digital files he has of the five copyrighted works. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 20th day of November 2020.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge